UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE M. MEDECK, JR.,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. EDCV 13-376 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

**I.   SUMMARY**

     On February 28, 2013, plaintiff Bruce M. Medeck, Jr. ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

     This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; March 5, 2013 Case Management Order ¶ 5.

---

[1] Carolyn W. Colvin is substituted as Acting Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d).

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On June 24, 2010, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 12, 121). Plaintiff asserted that he became disabled on May 9, 2008, due to a herniated lumbar disc and lumbar spine problems (left leg). (AR 152). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on November 28, 2011. (AR 24-60).

On December 19, 2011, the ALJ determined that plaintiff was disabled for the closed period of May 9, 2008 through October 14, 2010, and that, due to medical improvement, plaintiff was not disabled from October 15, 2010, through the date of the decision. (AR 12-23). The ALJ also found that beginning on October 15, 2010: (1) plaintiff suffered from the following severe impairments: herniated lumbar disc at the L5-S1 level status post laminectomy and fusion surgery, residual radiculopathy of the left leg, and obesity (AR 15, 20); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 20); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with additional limitations[2] (AR 20); (4) plaintiff could not perform his past relevant work (AR 22); (5) there are jobs that exist in significant numbers in the national

---

[2]The ALJ determined that plaintiff also: (i) could not sit or stand for more than an hour with the ability to change positions briefly while staying on task; (ii) could occasionally bend, stoop, kneel, balance, and climb stairs or ramps; (iii) could not crawl, crouch, walk/stand on uneven terrain, or climb ladders, ropes or scaffolds; (iv) needed to avoid working around hazards such as moving machinery and unprotected heights; and (v) could occasionally push and pull with his left leg or foot. (AR 20).

economy that plaintiff could perform, specifically assembler of small parts, checker II, and counter clerk (AR 22-23); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 22).

The Appeals Council denied plaintiff's application for review. (AR 1).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

1    (4)   Does the claimant possess the residual functional capacity to
2          perform claimant's past relevant work?  If so, the claimant is
3          not disabled.  If not, proceed to step five.
4    (5)   Does the claimant's residual functional capacity, when
5          considered with the claimant's age, education, and work
6          experience, allow the claimant to adjust to other work that
7          exists in significant numbers in the national economy?  If so,
8          the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.   Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed properly to consider the opinions of Dr. Jae Chon, plaintiff's treating orthopedic surgeon. (Plaintiff's Motion at 5-6). The Court agrees. As the Court cannot find the ALJ's error harmless, a remand is warranted.

### A. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v.

---

[3] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted). The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct." Id.

### B. Analysis

In an October 14, 2010 a Residual Functional Capacity Questionnaire-Spine, Dr. Chon opined, among other things, that plaintiff (1) could sit for about two hours and stand/walk for about two hours in an eight-hour working day (with normal breaks); (2) needed to walk around every 30 minutes for 10 minutes at a time; (3) needed to be able to shift positions at will from sitting, to standing or walking; (4) needed to take an unscheduled 10 minute break every hour; (5) could

rarely lift and carry even less than 10 pounds; (6) could rarely twist, stoop or bend, and never climb ladders; (7) would likely have "good days" and "bad days"; and (8) would likely be absent from work more than four days per month as a result of his impairments or treatment (collectively "Dr. Chon's Opinions").  (AR 596-600).

In his decision, the ALJ gave "some weight" to Dr. Chon's Opinions for the period from May 9, 2008 through October 14, 2010, but rejected Dr. Chon's Opinions for the period beginning October 15, 2010 essentially because "Dr. Chon's Notes indicate[d] that [plaintiff] was experiencing substantial improvement" and "Dr. Chon's assessment [was] inconsistent . . . with his treatment notes [and plaintiff's] testimony regarding his functionality."  (AR 22).  The ALJ's reasons for partially rejecting Dr. Chon's Opinions were legally insufficient.

First, the ALJ's partial rejection of Dr. Chon's Opinions apparently was based on an incorrect characterization of the record.  For example, the ALJ wrote that "[b]y October [plaintiff] reported to Dr. Chon that his sciatic nerve pain was gone and that he had improved such that he was attending community college classes four times a week while taking care of his young children," and that "Dr. Chon observed that [plaintiff] was not needing to wear his [back] brace any longer, appeared in no acute distress, was able to heel/toe walk, do a partial deep knee bend, do heel lifts, and exhibited only a mildly positive straight leg raising test."  (AR 21-22) (citing Exhibits 15F at 1 [AR 513], 16F at 19, 21 [AR 536, 538]).  Although the ALJ attributes the foregoing observations to Dr. Chon, all but one (*i.e.* that plaintiff "exhibited only a mildly positive straight leg raising test") were, in fact, provided by an entirely different treating source (*i.e.*, Dr. Richard I. Woods).  (AR 535-36, 538, 544).  The ALJ also wrote that plaintiff underwent back surgery in February 2011, when the record reflects that plaintiff's surgery actually took place in 2010.  (Compare AR 21 with AR 434-36).  The ALJ's incorrect characterization of the medical evidence calls into question the validity

of both the ALJ's evaluation of Dr. Chon's Opinions and the ALJ's decision as a whole.  See, e.g., Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir. 1999) (A "specific finding" that consists of an "inaccurate characterization of the evidence" cannot support an adverse credibility determination); Lesko v. Shalala, 1995 WL 263995 *7 (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical record" found to constitute reversible error).

Second, the treatment note which the ALJ correctly attributed to Dr. Chon (*i.e.* an October 14, 2010 Detailed Reevaluation (AR 513)) stated in a conclusory manner that plaintiff "continued to make progress," plaintiff's leg symptoms had "improved," and plaintiff was "having less and less issues as time passe[d], and noted that x-rays of plaintiff's lumbar spine "reveal[ed] implants in place, and further consolidation" and plaintiff "ha[d] mildly positive straight leg raise." (AR 513). The Court cannot conclude that such findings reflect a "substantial improvement" in plaintiff's condition or that they contradict Dr. Chon's Opinions – especially since, in the same treatment record, Dr. Chon noted that plaintiff's work status would be continued as "TTD" (*i.e.*, Temporary Total Disability).[4] (AR 513).

Third, the ALJ also wrote that "[a]fter his surgery, [plaintiff] . . . showed steady improvement with no noted complications in his recovery process." (AR 21) (citing Exhibits 11F at 38, 41, 44, 45 [AR 422, 425, 428, 429], 16F at 33 [AR 550]). The Court cannot conclude, however, that the referenced medical records support the ALJ's partial rejection of Dr. Chon's Opinions. Specifically, such

---

[4]In workers' compensation parlance "[t]he term 'temporarily totally disabled' means that an individual is 'totally incapacitated' and 'unable to earn any income during the period when he is recovering from the effects of the injury.'" Booth v. Barnhart, 181 F. Supp. 2d 1099, 1103 n.2 (C.D. Cal. 2002) (quoting Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600, 605 (9th Cir. 1996)); see also W. M. Lyles Co. v. Workmen's Compensation Appeals Board, 3 Cal. App. 3d 132, 136 (1969) ("The period of temporary total disability is that period when the employee is totally incapacitated for work and during which he may reasonably be expected to be cured or materially improved with proper medical attention.") (citations omitted).

records pertain to the period during which the ALJ found Dr. Chon's Opinion's credible and plaintiff disabled (*i.e.*, evaluations dated March 4, 2010 [AR 429], April 15, 2010 [AR 425], and June 3, 2010 [AR 422]). Moreover, at each evaluation Dr. Chon continued plaintiff's TTD status (which, as noted above, reflects that Dr. Chon believed plaintiff was "totally incapacitated for work [purposes]"). Id. In addition, contrary to the ALJ's statement that during recovery plaintiff had "no" noted complications, the March 4, 2010 Post Operative Evaluation indicates that just weeks after the surgery plaintiff experienced, at times, significant pain in his bladder which Dr. Chon found worthy of prophylactic treatment and further testing. (AR 429).

  Fourth, the ALJ also found that Dr. Chon's Opinions were "inconsistent . . . with [plaintiff's] testimony regarding his functionality." (AR 21-22). The hearing transcript reflects otherwise. For example, as the ALJ correctly noted, plaintiff testified at the hearing "that he could lift 60-70 pounds," and "that he [was] able to work full time" at a job which required him to "drive over a 200-mile service area." (AR 21-22). The foregoing testimony, however, only addressed plaintiff's lifting capacity at the time of the hearing (*i.e.*, on November 28, 2011)[5] and the job plaintiff held beginning in August 2011. (AR 30-31, 42). Accordingly, any conflict between such testimony and Dr. Chon's Opinions was irrelevant since plaintiff essentially concedes that his disability ended on August 1, 2011 (Plaintiff's Motion at 5). The ALJ also wrote that plaintiff's testimony reflected that plaintiff had been attending college classes "regularly since October 2010." (AR 21). Plaintiff's testimony suggests, however, that plaintiff did not return to school until February 2011 (*i.e.*, he "[took] a year off" from school after his February 2010 surgery). (AR 29).

---

  [5]For example, at the hearing plaintiff's testimony that he could lift 60-70 pounds was in response to the ALJ's question about plaintiff's lifting and carrying abilities "now" (reasonably interpreted as the date of the hearing). (AR 42).

1       Fifth, the ALJ also wrote that "[b]y March 2011, Dr. Chon noted that
2  [plaintiff] had significant progress with his healing" and that two months later
3  plaintiff reported physical therapy "had been very helpful" and "that [plaintiff's]
4  range of motion in his back had improved as well as his strength." (AR 21) (citing
5  Exhibit 21F at 2 [AR 570] (May 5, 2011 Detailed Reevaluation), 4 [AR 572]
6  (March 10, 2011 Detailed Reevaluation)).  The Court cannot conclude that any
7  conflicting evidence in Dr. Chon's March and May 2011 reevaluations (which,
8  among other things, continued plaintiff's TTD status) is a specific and legitimate
9  reason for discrediting Dr. Chon's Opinions from at least five months earlier (*i.e.*,
10 on October 15, 2010).
11      Finally, considering that Dr. Chon essentially concluded that plaintiff would
12 be unable to do even sedentary work, this Court cannot conclude that the
13 vocational expert would have opined (or that the ALJ relying upon such opinion
14 would have determined) that plaintiff could perform work which exists in
15 significant numbers in the national economy if the ALJ had included in the
16 hypothetical question the significant functional limitations identified in Dr. Chon's
17 Opinions.  Therefore, the Court cannot find that the ALJ's errors were harmless.
18      Accordingly, this case must be remanded to permit the ALJ properly to
19 consider the medical opinion evidence.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

## V. CONCLUSION[6]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[7]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 31, 2013

                                                   /s/
                                      Honorable Jacqueline Chooljian
                                      UNITED STATES MAGISTRATE JUDGE

---

[6] The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. On remand, however, the ALJ may wish to (1) more specifically explain the grounds, if any, for discounting the credibility of plaintiff's subjective complaints; and (2) address the extent to which he considered the differences between the social security disability scheme and the California workers' compensation scheme when evaluating the opinions provided by Dr. Richard I. Woods, the Agreed Medical Examiner for plaintiff's workers' compensation case. See, e.g., Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988) (ALJ interpretation of treating physician's opinion erroneous where record clear that ALJ affirmatively failed to consider distinction between categories of work under social security disability scheme versus workers' compensation scheme).

[7] When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, additional administrative proceedings could remedy the defects in the decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).